MARGARET H. ANDREWS v. AUGUST RICHARD PETERS, III

No. 813SC383

(Filed 15 December 1981)

**Master and Servant § 87.1— injury from intentional tort—workers' compensation and common law actions**

The Workers' Compensation Act does not preclude an employee who was injured by an intentional tort of a fellow employee from bringing a common law action against the fellow employee to recover for the intentional tort. Furthermore, the employee injured by the intentional tort may pursue both his workers' compensation and common law remedies, with the employer to be reimbursed to the extent sums recovered in the common law action duplicate sums paid under the Workers' Compensation Act.

APPEAL by plaintiff from *Reid, Judge.* Order entered 30 January 1981 in Superior Court, PITT County. Heard in the Court of Appeals 19 November 1981.

Plaintiff appeals from a dismissal of her action pursuant to Rule 12(b)(1).

Plaintiff and defendant are both employees of Burroughs Wellcome Corporation. On 27 September 1979, defendant, while in the course of his employment, walked up behind plaintiff and placed his right knee behind her right knee. Plaintiff fell to the floor and sustained personal injuries.

Subsequent to the injury, plaintiff received Workers' Compensation benefits amounting to $2,006.05 for medical expenses and $2,972.00 for 10% permanent partial disability. Plaintiff then asserted a tort action against defendant for intentional assault. In her complaint, she seeks compensation for medical expenses, loss of income, pain and suffering, and permanent disability. She also seeks punitive damages.

In his reply, defendant admits that he caused plaintiff to fall. He denies, however, that his conduct constituted an intentional assault and battery. Defendant moved to dismiss the action pursuant to Rule 12(b)(1) and 12(b)(6).

On 30 January 1981, the court granted defendant's motion pursuant to Rule 12(b)(1), concluding that plaintiff was precluded from bringing a tort action against defendant since she had

Andrews v. Peters

received benefits under Chapter 97 of North Carolina General Statutes.

*James, Hite, Cavendish and Blount, by M. E. Cavendish and Hugh D. Cox, Jr., for plaintiff appellant.*

*Everett and Cheatham, by Edward J. Harper, II, for defendant appellee.*

VAUGHN, Judge.

The first issue is whether North Carolina's Workers' Compensation Act is the exclusive remedy for an employee intentionally injured by a fellow employee. We hold that it is not.

An examination of the development of workers' compensation laws leads to this conclusion. Before the laws' advent, some employers voluntarily assumed financial responsibility for their injured employees. Often, however, the employees were relegated to common law tort actions. So many defenses were available to the employer—contributory negligence, assumption of risk, the fellow-servant rule—that it was difficult for an employee to succeed at a negligence action. S. Horovitz, Injury and Death Under Workmen's Compensation Laws (1944).

Workers' compensation laws were a statutory compromise. The new acts assured workers compensation for injuries arising out of and in the course of employment without their having to prove negligence on the part of the employer. In exchange for the employer's loss of common law defenses, however, the employee gave up his right to common law verdicts. 2A A. Larson, The Law of Workmen's Compensation § 72.20 (1976) [hereinafter cited as Larson]; *Smith v. Liberty Mut. Ins. Co.*, 409 F. Supp. 1211 (M.D. N.C. 1976). In effect, tort liability was replaced with no-fault liability.

All worker compensation acts contain some provision regarding the exclusivity of the remedy as applied to an employer. G.S. 97-10.1 states the following:

> "If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee . . . shall exclude all other rights and remedies of the employee . . . as

against the employer at common law or otherwise on account of such injury or death."

Our courts, therefore, have barred injured employees covered by the act from bringing negligence actions against their employers. *Johnson v. United States*, 133 F. Supp. 613 (E.D. N.C. 1955); *Bryant v. Dougherty*, 267 N.C. 545, 148 S.E. 2d 548 (1966); *Lovette v. Lloyd*, 236 N.C. 663, 73 S.E. 2d 886 (1953).

Jurisdictions differ as to whether such immunity should extend to co-employees. In most jurisdictions, courts have interpreted the third party statute of their state's workers' compensation act to allow common law negligence actions against co-employees. 2A Larson, § 72.00. One rationale is the doctrine that existing common law actions should not be abrogated except by direct enactment. Marks, Klein & Long, *Co-Employee Suits Under Workmen's Compensation*, 26 Fed'n. Ins. Counsel Q. 327, 331 (1976).

North Carolina, however, has construed its statutes to provide such enactment. G.S. 97-9 states "Every employer subject to the compensation provisions of this Article shall secure the payment of compensation to his employees . . . and while such security remains in force, he or those conducting his business shall only be liable to any employee for personal injury or death . . . in the manner herein specified." In *Altman v. Sanders*, 267 N.C. 158, 148 S.E. 2d 21 (1966), the Supreme Court interpreted the phrase "those conducting his business" to include fellow employees. By reading G.S. 97-9 in conjunction with G.S. 97-10.1, *supra*, *Smith v. Liberty Mut. Ins. Co.*, 409 F. Supp. 1211 (M.D. N.C. 1976), excluded fellow employees from common law liability. *Accord*, *Strickland v. King* and *Sellers v. King*, 293 N.C. 731, 239 S.E. 2d 243 (1977). G.S. 97-10.2 which provides for actions against "some person other than the employer" has been held inapplicable to the negligent employee. *Warner v. Leder*, 234 N.C. 727, 69 S.E. 2d 6 (1952). The third party statute applies only to persons who are *strangers* to the employment and negligently cause an injury. 234 N.C. at 732, 69 S.E. 2d at 9.

One can understand the extension of an employer's immunity to employees when one considers the industrial setting. Accidents are bound to happen. By accepting employment, a worker increases not only the risk of injuring himself but also the risk of

---

Andrews v. Peters

---

negligently injuring others. North Carolina has made a policy decision that employees should not bear the cost of such accidents. Rather, economic loss should be absorbed by industry and ultimately passed on to the consumer. W. Prosser, Handbook of the Law of Torts § 80 (4th ed. 1971).

Many state statutes, however, which contain grants of co-employee immunity, expressly exclude from that immunity specific types of behavior such as intentional or malicious acts.[1] 9 Cumberland L. Rev. 921 (1979). Other jurisdictions have judicially limited the express co-employee immunity provisions of their workmen compensation statutes to exclude intentional acts causing injury. *See, e.g., Elliott v. Brown,* 569 P. 2d 1323 (Alaska 1977); *Jablonski v. Multack,* 63 Ill. App. 3d 908, 380 N.E. 2d 924 (1978); *George Petro, Inc. v. Bailey,* 438 S.W. 2d 88 (Ky. 1968); *Mazarredo v. Levine,* 274 App. Div. 122, 80 N.Y.S. 2d 237 (1948); *Bryan v. Utah International,* 533 P. 2d 892 (Utah 1975). The conclusion in *Mazarredo v. Levine* is common to these decisions: "It seems unreasonable to suppose that the Legislature intended to give statutory protection in the form of immunity from suit for a deliberate and intentional wrongful act." 274 App. Div. at 127, 80 N.Y.S. 2d at 242.

We likewise conclude that an intentional tort is not the type of "industrial accident" to which our legislature intended to give a co-employee immunity. To hold otherwise is to remove responsibility from the co-employee for his intentional conduct. Epstein, *Coordination of Workers' Compensation Benefits with Tort Damage Awards,* 13 Forum 464 (1978). Why should he be concerned about the consequences of his acts if the cost of any intentionally-inflicted injury will be absorbed by the industry?

Earlier decisions by our courts have recognized that assaultive behavior may remove a co-employee from his immunity to common law actions. *Wesley v. Lea,* 252 N.C. 540, 114 S.E. 2d 350 (1960); *Warner v. Leder, supra; Essick v. Lexington,* 232 N.C. 200, 60 S.E. 2d 106 (1950). We now hold that such behavior does

---

1. Ariz. Rev. Stat. Ann. § 23-1022 (Supp. 1971-1980); Cal. Lab. Code § 3601 (a)(1) (West Supp. 1980); Conn. Gen. Stat. Ann. § 31-293(a) (West 1972); Haw. Rev. Stat. § 386-8 (1976); La. Rev. Stat. Ann. § 23:1032 (West Supp. 1980); Mont. Code Ann. § 39-71-413 (1981); N.J. Stat. Ann. § 34:15-8 (West Supp. 1981); Or. Rev. Stat. § 656.018(3)(a) (1979); Pa. Stat. Ann. tit. 77 § 72 (Purdon Supp. 1980); W. Va. Code § 23-2-6a (1981).

limit an employee's immunity under the Workers' Compensation Act. Chapter 97, therefore, does not preclude the present plaintiff from bringing an intentional tort action against the defendant.

The second issue is whether plaintiff is, nevertheless, foreclosed from her action because she has already received and accepted compensation benefits under the Act. We conclude that an injured employee is *not* held to an election in the case of an assault by a co-employee.

In so holding, we acknowledge the general rule in other jurisdictions that a successful compensation claim bars a subsequent damage suit. 2A Larson § 67.22. Courts have held that the common law and Workers' Compensation remedies are mutually exclusive. *See, e.g., Jones v. Jeffreys*, 244 S.W. 2d 924 (Tex. 1951). The mere fact, however, that an injury is termed "accidental" from the injured employee's viewpoint, requiring the employer to pay compensation under the Act, does not mean that the injury is accidental from the viewpoint of the intentional assailant.

Other state courts have allowed the injured employee to pursue both actions to a recovery. Utah's statute states that

"[t]he right to recover compensation . . . by an employee . . . shall be the exclusive remedy against the employer *and . . . any . . . employee* of the employer . . . and the liabilities of the employer imposed by this act shall be in place of any and all other civil liability whatsoever, at common law or otherwise, . . . and no action at law may be maintained against an employer *or against any . . . employee* . . . based upon any accident. . . ."

Utah Code Ann. § 35-1-60 (1974) (emphasis added). Despite such express language, the Utah court allowed an employee to receive compensation benefits *and* pursue his tort action. *Bryan v. Utah International*, 533 P. 2d 892 (Utah 1975). Pointing out that an election is not required in the case of a third party who intentionally injures the employee, the court refused to hold plaintiff to an election when the intentional tortfeasor was his fellow employee. 533 P. 2d at 894.

In *Elliott v. Brown*, 569 P. 2d 1323 (Alaska 1977), the applicable statute read:

"If on account of disability or death for which compensation is payable under this chapter the person entitled to the compensation believes that a third person *other than the employer or a fellow employee* is liable for damages, he need not elect whether to receive compensation or to recover damages from the third person."

Alaska Stat. § 23.30.015(a) (1972) (emphasis added). The court noted that by negative implication, Alaska's statute indicates an election is required between statutory and common law remedies when the worker is injured by a fellow employee. The court, nevertheless, reached a different conclusion. Since the exclusivity provision of Alaska's Workers' Compensation Act does not protect a fellow employee committing an intentional tort despite the terms "employer and any fellow employee," the court held that logically the co-employee must also be considered outside the purview of the election of remedies provision. 569 P. 2d at 1327.

North Carolina courts have only dealt with intentional assault by an *employer.* They have consistently held that such action removes the employer from his common law immunity:

" 'Where the employer is guilty of a felonious or wilful assault on an employee he cannot relegate him to the compensation act for recovery. It would be against sound reason to allow the employer deliberately to batter his helper, and then compel the worker to accept moderate workmen's compensation benefits, either from his insurance carrier or from himself as self-insurer.' "

Horovitz, *supra,* at 336, as quoted in *Warner v. Leder,* 234 N.C. at 733-34, 69 S.E. 2d at 10; *Essick v. Lexington,* 232 N.C. at 210, 60 S.E. 2d at 113-14. The employee, however, must choose between suing his employer at common law or accepting compensation. *Id.*

One can readily understand the rationale for requiring an election when the employer is the intentional tortfeasor. Under the Workers' Compensation Act, either the employer himself or the insurance carrier to which he has paid premiums must bear the expense of defending the claim and satisfying any compensation awarded. Therefore, a tort action in addition to the statutory action means the employer must defend against the same claim in two separate forums.

One cannot use the same rationale, however, to justify requiring an election when the intentional tortfeasor is a co-employee. He has contributed neither to the defense of any compensation claim nor to the satisfaction of any award. In fact, if a plaintiff is barred from pursuing an intentional tort action because he has accepted compensation benefits, then we are again confronted with the situation of the co-employee insulated from the effects of his assaultive conduct.

We, therefore, hold that in cases of intentional misconduct by a co-employee, the injured worker is free to pursue both his common law and compensation remedies. *See also* Mont. Code Ann. § 39-71-413 (1981). Allowing an independent action against the assaultive co-employee will benefit industry and the injured employee. The employer (or his insurance carrier) can be reimbursed to the extent sums recovered duplicate sums paid under the Workers' Compensation Act. *Compare with* G.S. 97-10.2(f). *See also Bryan v. Utah International,* 533 P. 2d 892 (Utah 1975). The employee, on the other hand, has the opportunity to recover elements of damages not covered by workers' compensation, such as pain and suffering. *Branham v. Panel Co.,* 223 N.C. 233, 25 S.E. 2d 865 (1943).

Defendant argues that *Warner v. Leder, supra,* suggests a contrary result. Since the *injury* complained of in that action, however, was negligently inflicted, the present issue was not before the Court. Furthermore, the authority quoted in *Warner* deals with election in the case of an assaultive *employer,* not assaultive *employee.* We conclude, therefore, that our present holding is not in conflict with the decision in *Warner.*

In summary, we adhere to past decisions that the Workers' Compensation Act is the exclusive remedy for negligently caused injuries arising out of and in the course of employment. The cost of such injuries should be borne by industry and the public, and no one worker should be liable. An intentionally inflicted injury, however, is not the type industrial accident which industry and the public should exclusively absorb. We, therefore, conclude that North Carolina's Workers' Compensation Act does not preclude an employee injured in the course of employment from seeking recovery from the co-employee who is the intentional tortfeasor.

Andrews v. Peters

We also conclude that the plaintiff in such a situation is not held to an election. He may recover both compensation benefits and damages, reimbursing the employer for any duplicative amounts received. There is one injury and still only one recovery. By allowing the injured employee to additionally pursue his assault action, however, we are providing him with the fullest recovery. The cost of the intentionally inflicted injury is shifted back to the assaultive co-employee, as it should be.

Reversed and remanded for trial.

Judges WEBB and HILL concur.